## SPAULDING, Appellant, v. CITY OF EDINA, Respondent.

### St. Louis Court of Appeals, January 19, 1904.

1. **PRACTICE: New Trial: Newly Discovered Evidence.** Affidavits, filed by defendant, with a motion for a new trial on the ground of newly discovered evidence, which contain only statements made to affiants by plaintiff's husband, should not be considered because the evidence is hearsay.

2. **APPELLATE PRACTICE: Weight of Evidence: Function of Trial Court.** When a verdict has been set aside by the trial judge for the reason that in his opinion it is against the weight of evidence, it is only in a case free from doubt that an appellate court will review the action.

Appeal from Knox Circuit Court.—*Hon. E. R. McKee,* Judge.

AFFIRMED.

*C. R. Fowler* and *L. F. Cottey* for appellant.

(1) The rule is well settled, that a motion for a new trial, on the ground of newly discovered evidence, must be supported by the affidavit of the party moving for a new trial, or some excuse given for its absence. (2) In this case the defendant is a corporation, but the mayor is the chief officer and legally represents the defend-

ant. Service of summons must be had on the mayor because he is the chief officer.   We think the affidavit is fatally defective because not made by the mayor or at least some excuse given for its absence. The general rule is stated in the following cases: State v. McLaughlin, 27 Mo. 111; State v. Nagel, 136 Mo. 50; State v. Campbell, 115 Mo. 393; State v. Nickens, 122 Mo. 612; State v. Gordon, 153 Mo. 577; State v. Soper, 148 Mo. 240; State v. Lucas, 147 Mo. 72; State v. Miller, 144 Mo. 30.   (3) Again the rule is well settled that the evidence must not be cumulative, and must be so material that it would probably produce a different result if the new trial were granted.   State v. Ray, 53 Mo. 349; State v. Potter, 108 Mo. 430; State v. Myers, 115 Mo. 398; State v. Sansone, 116 Mo. 14; Folding Bed Co. v. Railroad, 148 Mo. 484 and 485.   (4)   We insist that the court erred in granting a new trial  on the second ground stated in the order; that the verdict is against the greater weight of the evidence.   We concede the general rule to be, that the appellate courts will not weigh the evidence, where there is a substantial conflict.   But there is a well defined exception to that rule.   The exception is, that if upon the whole record, the party in whose favor a new trial has been granted was not entitled to a verdict, then the action of the trial court in granting a new trial will be set aside, and the verdict restored to the party entitled to it.   Haven v. Railroad, 155 Mo. 229; Graney v. Railroad, 157 Mo. 678; Neville v. Railroad, 158 Mo. 318; Roberts v. Telephone Co., 166 Mo. 385; State to use v. Stinebaker, 90 Mo. App. 280; Roman v. Boston Trading Co., 87 Mo. App. 191; Kingsbury v. St. Joseph, 94 Mo. App. 304; Knapp, Stout & Co. v. Standley, 45 Mo. App. 264; Smith v. Railroad, 92 Mo. App. 41.

*G. R. Balthrope* and *C. D. Stewart* for respondent.

(1)   The court did not err in sustaining the motion on ground of newly discovered evidence.   Howland v. Reives, 25 Mo. App. 458; State v. Murry, 91 Mo. 95, 103

and 104; State v. Bailey, 94 Mo. 315 and 316; State v. Mobeary, 21 Mo. 604; Coleman v. Cole, 96 Mo. App. 22. (2) The court did not err in sustaining the motion on account of the verdict being against greater weight of the evidence because the volume and weight of the evidence is against the verdict and in favor of defendant on merits. Moore v. Railroad, 146 Mo. 582; Hurst v. Railroad, 163 Mo. 322; 1 Bailey on Personal Injuries, sec. 1123. (3) The evidence in this case is conflicting as to what caused the injury complained of, and on the whole favors the defendant and it is the duty of the court to set aside a verdict that he is not satisfied with and does not concur in. Railroad v. Martin, 43 Mo. App. 597; State v. Young, 119 Mo. 495; Iron Mountain Bank v. Armstrong, 92 Mo. 280; McKay v. Underwood, 47 Mo. 187; McDonough v. Nicholson, 46 Mo. 35; Cook v. Railroad, 56 Mo. 384; Reed v. Ins. Co., 58 Mo. 429, 430; Vastine v. Rex, 93 Mo. App. 93; Haven v. Railroad, 155 Mo. 229; Van Liew v. Barrett Co., 144 Mo. 509; Drumm-Flato Com. Co. v. Summers, 89 Mo. App. 300; Yates v. Shanklin, 85 Mo. App. 358; Hesse v. Duff, 88 Mo. App. 66.

BLAND, P. J.—The suit is to recover damages alleged in the petition to have resulted from a fall by plaintiff, caused by a defective sidewalk negligently maintained on the side of one of its streets by the defendant city. The answer was a general denial and a plea of contributory negligence. The verdict was for the plaintiff which, on motion of defendant, the court set aside and awarded a new trial, assigning as reasons for its action, first, "on account of newly discovered evidence since the trial," and second, "on the further ground that the verdict is against the greater weight of the evidence in the cause." From the order setting aside the verdict and granting a new trial plaintiff duly appealed.

The evidence is voluminous and we will content

ourselves with a brief statement of what we find it tends to prove. For plaintiff it tends to prove that on the night of October 17, 1900, she and her husband were walking side by side on the east side of Main street between Jackson and Smallwood streets in the defendant city, when her husband stepped on the end of a loose board in the sidewalk causing it to fly up, and plaintiff, in the act of stepping, caught her foot under the board and was thrown forward, falling on the sidewalk with such force as to knock her senseless for the time being; that after recovering from the immediate shock caused by the fall, with the aid of her husband, she walked to her home (a short distance). She testified that the fall caused her such great pain that she had to take morphine before she could sleep; that since the fall and down to the day of the trial she had suffered almost continuously from severe pain in her back and in the back of her head; that there is a sore spot between her shoulders from which the pain seems to start and then runs into the back of her head like wires; that at times these pains shoot down her spine causing a heavy sensation in her lower limbs and feet and that this condition has continually grown worse since her fall; that she is unable to either sit or stand with her back in an erect position; that prior to and up to the day of her fall she was in good health and flesh, and was strong and weighed from one hundred and sixty-five to one hundred and seventy pounds.

She further testified that she had frequently passed over the sidewalk before her fall and knew that some of the boards in it were loose, and that the walk was out of repair, but it was the usual and direct route to and from her home to the town and she could not have reached her home on the night of her injury without going a considerable distance out of her way; that when she fell she was walking along in the usual way, was looking at the boards in front of her; that the walk was used by other people and she had no idea but that she

could walk over it in safety. She also testified that about thirteen months prior to falling on the walk she fell about three or four feet down a stairway hurting her right shoulder and that the soreness in her shoulder continued for a few days thereafter, but she suffered no discomfort from the stairway fall and after its occurrence she never had better health in her life up to the time she fell on the sidewalk.

Dr. Jergin testified that plaintiff called on him the last of October or the first of November, 1900, for treatment for the injury she claimed to have received from the fall on the sidewalk; that at the time she complained of intense pain in the back of her neck, head and shoulder; that he prescribed for her and continued to do so until the last of November when he moved away from the town; that he had examined her once since; that there was no change in her condition except in her appearance and loss of flesh; that she was suffering from a nervous affliction known as localized neuritis which could be caused by a fall or shock, and that the injury plaintiff complained of could be caused by the fall she had on the sidewalk and in his judgment the fall did cause the injury. Dr. Jergin's evidence was corroborated by that of Dr. Brown who treated plaintiff in January, 1901.

The sidewalk was constructed by laying three parallel stringers lengthwise on the street and nailing boards crosswise thereon. The evidence for plaintiff is that the stringers in the sidewalk where plaintiff fell were so rotten that they would not hold nails; that some of the boards were loose and that this defective condition was observable to anyone passing over the sidewalk.

The evidence further shows that John F. Beal, a member of the board of aldermen of defendant city, frequently passed over the sidewalk before plaintiff's fall on it. Samuel Randolph testified that he was street commissioner of the defendant city for six years prior

to May, 1900, and was well acquainted with the sidewalk in question; that it was in bad condition in April, 1900; that in an effort to repair the walk, he drove nails in the stringers to fasten down the loose boards but the stringers were so rotten they would not hold the nails. The evidence also is that the walk was not repaired between the months of April and November, 1900.

For the defendant the evidence tends to show that the surface of the walk appeared to be in good condition and that the stringers were not all rotten, but were partially decayed, and to a casual observer no defects appeared to exist in the sidewalk.

Dr. O'Brien testified for defendant that he lived just across the street from plaintiff in the year 1899 and 1900; that in 1899 plaintiff, in a conversation with him, stated that she had spells with her back and felt feeble; that she had pains through her body and could not endure what she had endured at other times; that she had fallen down stairs and it had injured her very much; that early in the spring of 1900 he had a second conversation with her; that she was carrying a hoe at the time and he said to her that she ought not to do such hard work, and she replied that if she had the strength she once had she would not mind such work, but her health was not as good as it used to be, and she did not have the same endurance as in former years; that since she had fallen down stairs she did not feel quite so well; that he concluded she was suffering from rheumatism and female weaknesses; that he never examined her and never prescribed for her; that she never consulted him as a physician; that he noticed the plaintiff at her ordinary work about her house until up to the time he removed to St. Louis (November 26, 1900). He gave it as his opinion that plaintiff's present condition could not have been caused by the fall on the sidewalk, but was caused by the fall on the stairway and excess of urea in her system.

Dr. Campbell testified that he was consulted by

plaintiff after she fell down the stairway but not after she fell on the sidewalk, and, in his opinion, her condition was caused by the fall on the stairway which condition was aggravated by the fall on the sidewalk.

Mrs. Freel testified that she met plaintiff after she had fallen down the stairway and plaintiff was all doubled over and said she had fallen down a stairway in a kind of twist and did not believe she would ever get over it, that she got a twist in the fall.

With the motion to set aside the verdict for new trial was filed the affidavit of the city attorney and the affidavits of the newly discovered witnesses. The affidavits of the witnesses are as follows:

"Mrs. Ellen McKendry, on her oath states: That she now resides in the city of Edina, Knox county, Missouri and that she is acquainted with Mrs. Ellen Spaulding, plaintiff in the cause now pending in Knox circuit court wherein the city of Edina is defendant; that she first formed an acquaintance with the said Ellen Spaulding on the 18th day of August, 1898, who was then living in the town of Baring, Mo., at the residence of John Spaulding, who was then living in the city of Edina and with whom affiant was then living and continued to live until about the 17th day of December, 1898. That during that time the said Ellen Spaulding often visited the house of the said John Spaulding who was her father-in-law, and the affiant in conversation with Ellen Spaulding during that time was often informed by the said Ellen Spaulding that she was suffering with great and intense pains in her back and limbs, and that said pains in her back and limbs had been continuous for several years prior to that time; and that owing to the condition of her back she was often in such condition as to render her unable to do anything, and was often compelled to take to her bed. And that said Ellen Spaulding often told the affiant that she, Spaulding, for the last several years, could not on account of the condition of her back and limbs, lift or carry a

bucket of water, or even lift the tea kettle off or on the stove.

"Affiant further says that said Ellen Spaulding was still in that condition, and she so stated that fact to the affiant at the last conversation she had with affiant, about the 15th day of December, 1899, and affiant further says that all the time affiant was living with the family of John Spaulding as aforesaid the health of the said Ellen Spaulding was very delicate, and bad on account of the condition of her back and limbs."

"John Gill on his oath states: That he is acquainted with Ellen Spaulding, plaintiff in the cause now pending in the circuit court of Knox county, wherein the city of Edina is defendant, and is also acquainted with her husband, Clark Spaulding; that on or about the 15th day of July, 1900, the said Clark Spaulding who was then working for affiant informed affiant that his wife, the plaintiff, had that day fallen down the stairway at their residence in the city of Edina, and badly crippled herself, and a few days thereafter, about the 20th day of July, 1900, affiant saw plaintiff Ellen Spaulding, at her said house in Edina, and she then and there told affiant that she had fallen down her own stairway, a few days prior thereto, and badly injured her back and body, and that she was in great pain and misery in her back on account of said fall. And affiant states: That he will testify to the foregoing facts on the retrial of said cause, should the court grant a new trial therein."

"Katie Maloney, on her oath states: That on or about the 15th day of October, 1900, I had a conversation with Clark Spaulding, the husband of Ellen Spaulding, who is plaintiff in the case now pending in the Knox circuit court, wherein the city of Edina is defendant, in which he stated that his wife, the said Ellen Spaulding, had fallen down the stairs and was not able to do anything."

The affidavit of Katie Maloney contains only hear-

say evidence and should not have been considered.   The
same remark applies to that portion of John Gill's affi-
davit detailing what Clark Spaulding told him about
his wife falling down stairs.

It seems to us the evidence, in respect to the defect-
ive condition of the sidewalk and the knowledge of the
city officials of that condition, greatly preponderates in
favor of plaintiff, but as to whether or not the diseased
condition of plaintiff was caused by her fall on the side-
walk or by the previous fall down the stairway, there is
substantial evidence both ways.   The jury, however,
resolved that issue in favor of the plaintiff.   The trial
judge, however, was of the opinion that the verdict was
against the weight of the evidence and assigned that as
one of the reasons for setting aside the verdict.   It was
said in Kuenzel v. Stevens, 155 Mo. 280, that the power
to grant a new trial should be exercised with great care
and that it is only when it very clearly appears that the
action of the trial court has not been guided by a wise
discretion that an appellate court will interfere.   In
Chouquette v. Railway, 152 Mo. 257, it was ruled that
an appellate court will not interfere with the action of
the trial court in setting aside a verdict of a jury unless
it satisfactorily appears that its discretion has been ar-
bitrarily and unreasonably exercised.   The same ruling
was made in Bemis Bros. Bag Co. v. Ryan Com. Co., 74
Mo. App. 627.   The general rule is that the trial judge
should be satisfied with the verdict of the jury, other-
wise he should set it aside and grant a new trial (The
State v. Young, 119 Mo. 495) and if he is satisfied that
the verdict is against the weight of the evidence he
should set it aside.   Iron Mountain Bank v. Armstrong,
92 Mo. 265; Lawson v. Mills, 130 Mo. 170; Dean v. Fire
Ass'n, 65 Mo. App. 209.   When a verdict has been set
aside by the trial judge for the reason that in his opinion
it is against the weight of the evidence, it is only in cases
free from doubt that an appellate court will review the
discretion of the trial judge.   Carr v. Dawes, 46 Mo.

App. 598; Reid, Murdock & Co. v. Lloyd & Moorman, 61 Mo. App. 646; Mason & Henry v. Onan, 67 Mo. App. 290; McCullough v. Ins. Co., 113 Mo. 606. In Loessing v. Loessing, 88 Mo. App. 494, it was held that an appeal from the ruling of a trial court granting a new trial presents only questions of law for review and does not authorize an appellate court to pass on the weight of the evidence nor to overrule the lower court and in the legitimate exercise of the discretion vested in it to award new trials on the ground that the verdict is opposed to the weight of the evidence. Substantially the same ruling was made in Kansas City Suburban Belt Railway Company v. McElroy, 161 Mo. 584.

In respect to the cause of plaintiff's diseased condition as we have said, the evidence was conflicting. This being so, the exercise of the discretion of the trial court in setting aside the verdict on the ground that it was against the weight of the evidence can not be reviewed by us. This view makes it unnecessary to discuss the other ground assigned by the court for setting aside the verdict.

The judgment is affirmed. *Reyburn* and *Goode,* *JJ.,* concur.